UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

BANK OF THE OZARKS,

Plaintiff,

v.                              4:11-cv-237

KINGSLAND HOSPITALITY, LLC, BHARAT GANDHI, KANUBHAI PATEL, and PARBHUBHAI PATEL,

Defendants.

## ORDER

### I. INTRODUCTION

Before the Court is Plaintiff's Motion for Summary Judgment. Doc. 28.

### II. BACKGROUND

Plaintiff Bank of the Ozarks ("Bank") filed this action for breach of note, breach of guaranty, and unjust enrichment on September 30, 2011, seeking approximately $3,200,000 in damages from Defendants Kingland Hospitality, LLC ("Kingsland"), Bharat Gandhi ("B. Gandhi"), Kanubhai Patel ("K. Patel"), Parbhubhai Patel ("P. Patel"). *See* Doc. 1. The Bank filed its Motion for Summary Judgment on June 5, 2012, Doc. 28, and Defendants responded on July 12, 2012. Doc. 33.

#### A. Facts

##### 1. The Note

On December 17, 2009, Kingsland, an LLC apparently formed to purchase and operate a Comfort Inn hotel at 111 Robert L. Edenfield Dr. Kingsland, Georgia 31548, *see* Docs. 28-2 at 42, 45; 33-1 at 3, 4, executed a promissory note ("Note") in favor of Woodlands Bank ("Woodlands") as a renewal of prior indebtedness related to the purchase of the hotel. Docs. 1-1 at 2; 1 at 4; Doc. 17 at 4. The Note obligates Kingsland to pay Woodlands, or its successor, all amounts due under the Note. Doc 17 at 4. The Note also obligates Kingsland to pay costs and expenses of collection, including court costs and fifteen percent (15%) of the remaining principal plus accrued interest as attorneys' fees under O.C.G.A. 13-1-11. *Id.* Kingsland executed the Note in Georgia, and the Note contemplated performance in Georgia. *See* Doc. 1-1.

##### 2. *Transfer and Assignment of the Note to the Bank*

On July 16, 2010, the Federal Deposit Insurance Corporation ("FDIC-R") was appointed receiver of Woodlands after its seizure by the Office of Thrift Supervision. Doc. 28-2 at 11, 29. That same day, the Bank purchased all of Woodlands's assets from the FDIC-R. *Id.* at 29. Almost three months later, the FDIC-R's receiver, Greg McKinney of the Bank, executed an assignment, which he recorded in the Superior Court of Camden County, evidencing the transfer of the Note from the FDIC-R to the Bank. *Id.* at 12.

##### 3. *The Guarantees, the Guarantors, and the Defaults*

A little more than two years before the current Note's execution, on November 28, 2007, K. Patel, a resident of Virginia, executed a special power of attorney giving B. Gandhi authority to "perform all and

1

every act that I, myself, could or would do in connection with the financing of the real property [located at] . . . 111 Edenfield Drive, Kingsland, Georgia 31548." Doc. 28-2 at 38. Notary public Teresa J. Boynton confirmed K. Patel's identity and affixed her seal. *Id.* at 51-52. Lay witness Christine Aurand witnessed the execution of the document and the confirmation of K. Patel's identity. *Id.* at 56-57, One week later, P. Patel, a resident of Florida, executed a power of attorney in favor of B. Gandhi with identical language. *Id.* at 40. Notary Susan D. Murray confirmed P. Patel's identity and affixed her seal. Doc. 28-3 at 2-3.

On January 17, 2008, B. Gandhi executed three guarantees of the original note from Kingsland to Woodlands—one each for himself, K. Patel, and P. Patel. *See* Docs. 1-2; 1-3; 1-4. These three documents all "absolutely and unconditionally guarantee[]" to the Bank the payment of the Note "and any extensions, renewals or replacements thereof." Docs. 1-2 at 2; 1-3 at 2; 1-4 at 2. B. Gandhi also on that date executed a deed to the 111 Edenfield Dr. property securing the note. Doc. 1-5. After execution of the Note, Woodlands extended over $2,000,000 to Kingsland. *See* Doc. 28-2 at 10.

By June 2010, however, Kingsland and at least two of the guarantors recognized that the hotel's revenue would not cover its obligations under the Note. Docs. 33-3 at 2; 33-2 at 4. Kingsland then defaulted. Docs. 1 at 8; 17 at 5. B. Gandhi similarly defaulted on his obligations under his guarantee of Kingsland's indebtedness. Docs. 1 at 9; 19 at 6. K. and P. Patel deny authorizing their guarantees and accordingly disclaim all obligations related to the Note. *See* Docs. 13 at 7; 15 at 8.

Defendants thereafter received from the Bank's counsel's notice of default and the Bank's intent to collect pursuant to the terms of the Note. Doc. 1-8. That notice listed $2,958,659.40 in principal, $41,755.85 in protective advances of property taxes owed to Camden County, and $11,764.47 in similar advances of taxes paid to the City of Kingsland, as owed to the Bank. *Id.* at 3. As of June 5, 2012, the total indebtedness stands at $2,905,139.08 in principal, $220,885.53 in accrued interest, and late charges of $7,956, in addition to the taxes the Bank paid after default. *See* Doc. 28-2 at 14, 34. "Default interest continues to accrue on the unpaid principal at the rate of $403.49 per [day] from June 6, 2012 through the date of judgment . . . ." *Id.* at 34. At no time since has any default been cured. *Id.* at 14-15.

All Defendants assert the defenses of mutual mistake of fact and estoppel.[1] K. Patel and P. Patel also claim this Court lacks personal jurisdiction over them and that the Statute of Frauds bars enforcement of their guarantees. *See* Docs. 13 at 1, 2; 15 at 1, 2.

In addition to denying the applicability of each defense, the Bank also asserts that

---

[1] All Defendants also assert a litany of other defenses, including, but not limited to, insufficiency of process, improper venue, waiver, and statute of limitations. *See* Docs. 13, 15, 17, 19. As each Defendant has admitted that no facts support those defenses, the Court declines to address their substance. *See* Docs. 28-2 at 66-70; 28-3 at 17-21, 38-42, 55-59. The Court does, however, elect to address further the ethical implications of such wanton pleading of defenses. *See infra* at 3.

Defendants improperly responded to the Bank's Motion for Summary Judgment and thus that Local Rule 56.1 ("LR 56.1") mandates judgment in the Bank's favor. Doc 37 at 1-3.

## III. ANALYSIS

Before delving into the substance of the claims and legitimate defenses presented in this case, the Court must confront defense counsel's conduct in submitting pleadings and briefs that potentially violate Federal Rule of Civil Procedure 11.

Rule 11 states that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, or submitting [it]—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

FED. R. CIV. P. 11(b). The Court also may *sua sponte* "order an attorney . . . to show cause why conduct . . . has not violated Rule 11(b)." *Id.* at (c)(3).

Attorneys, moreover, have a duty of candor to the Court that prohibits them from knowingly alleging claims and defenses that have no basis in law or fact. *See* GA. RULES OF PROF'L CONDUCT R. 3.3(a).[2] Attorneys also may not "assert a position, conduct a defense . . . or take other action on behalf of the client when . . . it is obvious that such action would serve merely to harass or maliciously injure another." *Id.* at R. 3.1.

All four defendants in this case share counsel. And in all four answers, counsel chose to sign pleadings that asserted defenses unsupported by any known facts. *See* Docs. 13, 15, 17, 19. All the answers assert, for example, the defenses of insufficiency of process and failure to join an indispensable party. Yet, no facts in support of either defense appear to exist in the record. More importantly, any investigation "reasonable under the circumstances" likely should have revealed facts indicating adequacy of process or failure to join an indispensable party. *See* FED. R. CIV. P. 11(b).

If Defendants' counsel failed to conduct a Rule 11 investigation, they violated their obligations to this Court when they

---

[2] "The standards of professional conduct of attorneys appearing in a case or proceeding [in this Court] . . . are governed by the Georgia Bar Rules of Professional Conduct and the American Bar Association's Model Rules of Professional Conduct. . . . A violation of any of these rules in connection with any matter pending before this Court may subject the attorney to appropriate discipline." LR 83.5(d), SDGa.

3

submitted signed pleadings containing uninvestigated defenses. *See* FED. R. CIV. P. 11(b). Counsel likewise violated Rule 11 if they chose to plead defenses they knew to be unsupported or unlikely to be supported by future discovery. *See id.* at (2), (3). Without more, however, the Court cannot determine whether Rule 11 sanctions are appropriate at this time.

Defendants' answers also may run afoul of the applicable rules of professional conduct. When the Bank inquired about the factual basis for the defenses in question, counsel for Defendants responded by stating that "Defendant[s] included this objection to preserve Defendant[s'] right to raise this objection. *No facts supporting this defense exist at this time.*" *See, e.g.*, Doc. 28-3 at 17 (emphasis added). Certainly the Federal Rules of Civil Procedure require parties to plead certain defenses—including those pleaded here—by the time they submit responsive pleadings or risk waiving them. *See* Fed. R. Civ. P. 12(b). But if no basis exists for pleading a defense, adding to an answer simply to preclude waiver borders on a violation of counsel's duty of candor to the Court. *See* GA. RULES OF PROF'L CONDUCT R. 3.3(a) (prohibiting the allegation of defenses known to have no basis in law or fact).

"It is axiomatic that attorneys owe a duty of candor to the court[,]" and that "[t]he judicial machinery is dependent on the full support of all members of the bench and bar." *Malautea v. Suzuki Motor Corp.*, 148 F.R.D. 362, 374 (S.D. Ga. 1991) (quoting *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1522 (11th Cir. 1986)). When attorneys misuse that machinery by averring to the Court that fallacies are truth, the Court must respond accordingly.

Because of the grave concerns raised by defense counsel's assertion of possibly specious defenses, the Court is compelled to require counsel to show cause why their conduct "has not violated Rule 11(b)." FED. R. CIV. P. 11(c)(3). The Court will also use Defendants' response in evaluating the propriety of sanctions under LR 83.5(d) for any violation of Georgia's Rules of Professional Conduct. Therefore, the Court **ORDERS** defense counsel to show cause within fourteen (14) days of this order why their conduct did not violate Rule 11.

The remainder of the Court's analysis proceeds as follows: First, the Court addresses the Bank's assertion that Defendants failed to dispute the Bank's Statement of Material Facts. Second, the Court evaluates the estoppel and mutual mistake defenses asserted by all Defendants. Third, the Court evaluates K. and P. Patel's personal jurisdiction and statute of frauds defenses. Finally, the Court addresses the Bank's claims of breach of note, breach of guaranty, and unjust enrichment.

### A. Local Rule 56.1

The Bank asserts that Defendants' response to the motion for summary judgment violates LR 56.1 and that the Court should therefore deem the Bank's Statement of Undisputed Material Facts ("SUF") admitted without opposition. *See* Doc. 37 at 2-3. Defendants responded with a brief in opposition to the motion, *see* Doc. 33, but did not file a separate, individually numbered refutation of the Bank's SUF.

LR 56.1 states:

4

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, *in addition to the brief*, there shall be annexed to the motion a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof. . . . All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted *unless controverted by a statement served by the opposing party.*

S.D. Ga. L.R. 56.1 (emphasis added). "Where the party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts . . . or otherwise fails to state a valid objection to the material fact . . . such fact is deemed admitted by the respondent." *Futch v. Chatham Cnty. Detention Ctr.*, No. CV410-192, 2012 WL 1557336, at *2 (S.D. Ga. May 2, 2012) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009)) (admitting the movant's SUF without opposition); *see also Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008); *Williams v. Slack*, 438 F. App'x 848, 850 (11th Cir. 2011).

*Futch* and the Eleventh Circuit cases, however, are distinguishable. Unlike here, where Defendants have filed a response brief, the plaintiff in *Futch* "filed neither any response to Defendants' [SUF] nor a brief in opposition to the motion for summary judgment." *Futch*, 2012 WL 1557336, at *3. Without any response whatsoever, in a brief or otherwise, of course the court in *Futch* deemed the SUF admitted. *Id.*

The Eleventh Circuit cases, on the other hand, all dealt with Northern District of Georgia Local Rule 56.1. *See Mann*, 588 F.3d at 1303; *Reese*, 527 F.3d at 1266; *Williams*, 438 F. App'x at 849. Whereas the Northern District's LR 56.1 explicitly requires summary judgment respondents to file a responsive brief *and* an individually numbered response to the movant's SUF, the Southern District of Georgia's LR 56.1 only requires the SUF be "controverted by a statement served by the opposing party." *Cf.* N.D. Ga. L.R. 56.1, *with* S.D. Ga. L.R. 56.1. Notably, the Southern District's LR 56.1 calls for the movant to file an SUF "in addition to the brief," but omits that language when describing what it requires of respondents.

The Court therefore declines to admit the Bank's SUF without considering any of Defendants' evidentiary submissions. To the extent that Defendants' reply brief conforms to the requirements of LR 56.1, the Court will consider it and the evidence it cites in the Court's evaluation of the Bank's Motion for Summary Judgment.[3]

### B. Defenses Asserted By All Defendants

*1. Estoppel*

---

[3] The Court does note, however, that the purpose of rules like LR 56.1 is to "mak[e] the parties organize the evidence rather than leaving the burden upon the district judge." *Reese*, 527 F.3d at 1268 (quoting *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 80 (1st Cir. 2005)). Although a response brief alone can satisfy the requirements of LR 56.1, the purpose of LR 56.1 leaves the Court in this case wanting something better capable of "focus[ing] the [Court's] attention on what is, and what is not, genuinely controverted." *Id.* (quoting *Mariani-Colon v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007)).

All four Defendants assert that the Bank should be estopped from collecting on the Note because the "Bank had knowledge that Defendant Kingsland . . . had insufficient financial ability to service the loan." Doc. 28-3 at 39; *see also id.* at 18-19, 56; Doc. 28-2 at 68.

The Bank argues that because Woodlands' officers never reduced their understandings and knowledge of Kingsland's financial condition to writing, 12 U.S.C. § 1823(e) and the doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942), operate to bar the defense. Since the Court finds that Defendants fail to establish a required element of the defense of estoppel, however, the Court does not consider the application of § 1823(e) and *D'Oench*.

Under Georgia law,[4] a party asserting estoppel must establish as to themselves: "(1) lack of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such character as to change his position prejudicially." *Bell v. Studdard*, 220 Ga. 756, 760 (1965); *see also Horne v. Exum*, 204 Ga. App. 337, 338 (1992). "[A]s related to the party against whom estoppel is sought," the necessary elements are:

> (1) conduct amounting to a false representation . . . or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; [and] (3) knowledge, actual or constructive, of the real facts.

*Bell*, 220 Ga. at 760.

Defendants fail to demonstrate at least one essential element of estoppel. Kingsland undoubtedly had knowledge of its own financial condition. Kingsland, as well as the other three Defendants, also fails to put forth evidence that Woodlands, the FDIC, or the Bank had actual or constructive knowledge of "the real facts." *Id.* Defendants assert that "[i]t is customary for a bank . . . to conduct an appraisal and generate a pro forma." Doc. 33 at 6. While that may be, and while a lack of an appraisal may have given Woodlands' successors constructive notice of Kingsland's poor financial health,[5] Defendants self-serving affidavits stating that they never provided Woodlands with appraisal and pro forma information do not establish a genuine dispute of fact as to whether Woodlands or its successors knew, or should have known, that Kingsland could not afford the Note. *See Johnson v. Fulton Concrete Co.*, 330 F. Supp. 2d 1330, 1334 (N.D. Ga. 2004) ("[U]nsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment." (citing *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714 (11th Cir. 1984))). Accordingly, the Court rejects Defendants' estoppel defense.

---

[4] Georgia law applies to breach of contract diversity actions. *See Goodwin v. George Fischer Foundry Sys., Inc.*, 769 F.2d 708, 711 (11th Cir. 1985) ("[A] federal court in a diversity case is required to apply the law of the state in which the federal court sits.").

[5] The Court does not suggest such steps are customary or that constructive notice would be found in such a situation. The Court merely assumes *arguendo* that Defendants established those points.

*2. Mutual Mistake*

All Defendants also claim that Woodlands's and Kingsland's belief in Kingsland's ability to repay constituted a mutual mistake barring enforcement of all payment obligations. *See, e.g.*, Doc. 28-3 at 41. As with Defendants' estoppel defense, the Bank asserts that § 1823(e) and the *D'Oench* doctrine bar consideration of the mutual mistake defense. Doc. 28-1 at 17. Defendants claim that *D'Oench* does not apply because the purposes of the doctrine are implicated only by "collusion, fraud, bad faith, or secret agreement," none of which are present here. Doc. 33 at 5-6.

In *D'Oench,* the Supreme Court held that agreements "outside the documents contained in [a] bank's records would not operate as a defense against suit by the FDIC [or its successors][6] on a note acquired from a failed bank." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citing *D'Oench*, 315 U.S. at 459. 12 U.S.C. § 1823(e) is the statutory counterpart to *D'Oench* and triggers the same analysis. *See Dunmar Corp.*, 43 F.3d at 593; *Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1515 (11th Cir. 1991). Section 1823(e) provides:

> Agreements against interests of Corporation
>
> (1) In general. No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section . . . either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement --
> A. is in writing,
> B. was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
> C. was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
> D. has been, continuously, from the time of its execution, an official record of the depository institution . . . .

The "rule that has emanated" from *D'Oench* and § 1823(e) is:

> In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.

*Baumann*, 934 F.2d at 1515.

Importantly, the word "agreement" in § 1823(e) denotes more than just an express

---

[6] Successors of the FDIC are undoubtedly entitled to the protections of *D'Oench. See First Union Nat'l Bank v. Hall*, 123 F.3d 1374, 1379 (11th Cir. 1997); *see also Fed. Fin. Co. v. Holden*, 268 Ga. 73, 74 (1997) ("[*D'Oench*'s] protection extends not only to the federal guarantor, but to assignees . . . .").

7

promise; it encompasses unrecorded conditions precedent—including the truth of warranties and conditions—as well. *See Langley v. FDIC*, 484 U.S. 86, 96 (1987).

In *Langley*, much like here, the petitioner borrowed money for a land purchase from an FDIC insured bank, executing a note and personal guarantee as consideration. *Id.* at 88. In a suit for breach of note, the petitioner claimed that the bank fraudulently misrepresented the land's size and character and in so doing induced the purchase. *Id.* at 89. The Court rejected petitioner's attempt to rescind the note based on the misrepresentations, instead holding that "neither fraud in the inducement nor knowledge [of the same] by the FDIC is relevant to the . . . application [of § 1823(e)]." *Id.* at 93. For the size of the land, or any condition precedent to payment on a note, to escape § 1823(e)'s bar, the Court held that it had to be written if it "tend[ed] to diminish or defeat" the interest of the FDIC. § 1823(e)(1); *Langley*, 484 U.S. at 96.

Applying § 1823(e) and *D'Oench*, the Court determines that Defendants may not avoid their obligations under the Note and the guarantees by virtue of mutual mistake.

Defendants' argument for mutual mistake centers on the contention that "Woodlands . . . believed that [Kingsland] would be able to service the loan at issue." Doc. 28-2 at 16, 17, 19. Defendants also allege in their response to the motion for summary judgment that "the bank would not have made the loan" had the bank known the true operating revenues of Kingsland. Doc. 33 at 8.

To begin, although Defendants claim that this defense "is based on the written and recorded agreement at issue in this case," *id.* at 7, nothing in the Note points to Woodlands' beliefs about Kingsland's financial condition. *See* Doc. 1-1. The Note merely sets out the terms and conditions of repayment. *Id.* Kingsland having the financial ability to repay the Note is not a condition, express or implied, of its obligation to perform, so far as the text is concerned. The Note simply calls for performance, much like the guarantees. *See id.*; *see, e.g.*, Doc. 1-2 at 2 ("[B. Gandhi] absolutely and *unconditionally* guarantees to Lender the full and prompt payment [of the Note] . . . .") (emphasis added).

Having established that Woodlands's ability to pay is unwritten, the Court now turns to whether that ability is an "agreement" for purposes of § 1823(e). First, Kingsland's ability to repay is a condition. If Kingsland could not repay, then it would be relieved of its performance obligations under the Note. And as in *Langley*, where the Court found an unwritten condition to be an agreement subject to § 1823(e), here too, Defendants assert the existence of an unwritten condition, and therefore an agreement. Because this agreement tends to diminish the interest of the Note's holder by eliminating the maker's and guarantors' obligation to repay, § 1823(e) bars its enforcement as against the FDIC or its successors. *See Langley*, 484 U.S. at 96.

Defendants incorrectly assert that § 1823(e) and *D'Oench* do not apply because the purported agreement—that Kingsland's ability to pay be a condition of its payment

8

obligation—lacks origins in fraud or bad faith. Section 1823(e) bars enforcement of unwritten agreements that "tend[] to diminish or defeat the interest of" the FDIC or its successors, not just agreements entered into with the intent to defraud. *See Langley*, 484 U.S at 93 (concluding existence of fraud irrelevant to § 1823(e)'s application). Although the purposes of the *D'Oench* doctrine (and thus § 1823(e)) are undoubtedly to protect the FDIC and its successors from "secret agreements" and "misrepresentations," *Dunmar Corp.*, 43 F.3d at 592, "one who signs a facially unqualified note subject to an unwritten . . . condition . . . has lent himself to a scheme or arrangement that is likely to mislead the banking authorities." *Langley*, 484 U.S. at 93.

Lastly, "[t]he burden of establishing that an agreement satisfies § 1823(e)(1)'s requirements lays with the party claiming the adverse interest." *Uhlig v. FDIC*, No. 4:11-cv-145, 2012 WL 27572, at *3 (S.D. Ga. Jan 4, 2012). As the Bank correctly notes, "rank speculation" cannot satisfy this burden. Doc. 37 at 4. Defendants offer nothing more than assertions and argument. Nowhere in their response do Defendants cite record evidence of the existence of any implied condition to Kingsland's payment obligation.

Even if the agreement here somehow escaped § 1823(e)'s bar (it does not), Defendants have entirely failed to demonstrate how. The Court therefore finds that § 1823(e) and the *D'Oench* doctrine prohibit the assertion of mutual mistake as a defense to any of Defendants' payment obligations under the Note or their respective guarantees.

### C. K. and P. Patel's Individual Defenses

*1. Personal Jurisdiction*

K. and P. Patel both assert that the Court lacks personal jurisdiction over them. *See, e.g.*, Doc. 33 at 9-10. K. Patel is a resident of Virginia, Doc. 28-2 at 65, and P. Patel is a resident of Florida. Doc. 28-3 at 16. K. Patel claims he never had any role in Kingsland, has never communicated with any representative of Woodlands, and did not participate in Kingsland's decision to purchase the hotel in Georgia. Doc. 28-2 at 65. P. Patel likewise asserts that he has never had a role with Kingsland, participated in the hotel purchase, or the decision to obtain a loan from Woodlands. Doc. 28-3 at 16. In their response brief, Defendants' also argue that K. and P. Patel "have objected under oath denying the existence of [the] special power of attorney relationship." Doc. 33 at 10.

The Bank argues jurisdiction is proper because K. and P. Patel availed themselves of Georgia courts by signing the power of attorney with B. Gandhi, who, as their agent, subsequently signed the guarantees for a loan made and to be performed in Georgia. Doc. 37 at 10.

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United

9

States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010).[7]

The Georgia long arm statute permits the "exercise of personal jurisdiction over any nonresident . . . if in person *or through an agent*, he or she: (1) Transacts any business within this state." O.C.G.A. § 9-10-91(1) (emphasis added). Federal courts "must apply the [transacts business prong] of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of . . . the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1263. In conducting those two inquiries:

> Jurisdiction exists on the basis of transacting business in [Georgia] if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517-18 (2006).

Executing personal guarantees for financial institutions can qualify as transacting business, even if the execution occurs outside Georgia. *See Paxton v. Citizens Bank and Trust of W. Ga.*, 307 Ga. App. 112, 116 (2010) (finding execution of personal guarantee of note given to procure funding for real estate purchase to be transacting business as defined by § 9-10-91(1)); *Robertson v. CRI, Inc.*, 267 Ga. App. 757, 763 (2004) (asserting jurisdiction over California resident who executed a guaranty in California in favor of a Georgia lender); *see also Innovative Clinical & Consulting Svcs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 675 (2005) ("[N]othing in [O.C.G.A. § 9-10-91(1)] requires the physical presence of the nonresident in Georgia . . . ."). Instead of looking solely where personal guarantees are executed, courts must "examine all of the relevant circumstances." *Paxton*, 307 Ga. App. at 117.

The Court now turns to the first step in the jurisdictional inquiry—determining whether K. and P. Patel transacted business in Georgia. This inquiry hinges on the power of attorney documents. If those are invalid, K. and P. Patel's guarantees also are invalid, as B. Gandhi would have lacked authority to sign those agreements. If the guarantees are invalid, K. and P. Patel transacted no business in Georgia sufficient to satisfy Georgia's long arm statute, nor would their contacts with the state satisfy due process.

K. and P. Patel deny executing the power of attorney relationship. Doc. 33 at 8, 10. They also assert that the Bank failed to examine the scope of B. Gandhi's authority, should the powers of attorney be found valid. *Id.* at 8-9. Neither argument prevails.

---

[7] The Bank cites *Southwire Co. v. Trans-World Metals & Co.*, 735 F.2d 440, 442 (11th Cir. 1984) for part (1) of this proposition. *See* Doc. 28-1 at 21. Counsel for the Bank failed to note that *Southwire*, though still good law in part, has been abrogated in part by *Diamond Crystal Brands*. The Court cautions counsel to take care to note such relevant subsequent history when citing case authority in the future.

First, neither Patel actually denies executing the power of attorney in their interrogatory responses; they only deny it in their response brief. *Cf. id.* at 8, *with* Docs. 33-2 at 1-3; 33-1 at 1-4; 36 at 1-2. Such unsupported denials do not comply with Local Rule 56.1 and accordingly will not be considered. *See* S.D. GA. LR 56.1; *Futch v. Chatham Cnty. Detention Ctr.*, No. CV410-192, 2012 WL 1557336, at *2 (S.D. Ga. May 6, 2012) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009)).

The Bank, on the other hand, presents more than enough evidence to find as a matter of law that K. and P. Patel executed the powers of attorney. Federal Rule of Evidence 902(8) provides that "[a] document accompanied by a certificate of acknowledgment that is lawfully executed by a notary public," is self-authenticating. Here, both power of attorney documents show the signatures of K. and P. Patel and the signature and seal of the notary public. Doc. 28-2 at 38, 40. The Bank also submits affidavits from the two notaries present when K. and P. Patel signed the documents, attesting to checking the identities of the signatories. *Id.* at 51-52; 28-3 at 2-3. Such uncontroverted evidence establishes the authenticity of the powers of attorney. *See* Fed. R. Evid. 902(8).

The powers of attorney also explicitly establish the authority of B. Gandhi as the agent for P. and K. Patel in matters related to financing the hotel at 111 Edenfield Dr. *See, e.g.,* Doc. 28-2 at 38 ("I, Kanubhai D. Patel, . . . do hereby name . . . Bharat Gandhi . . . Attorney-in-Fact . . . to do and perform all and every act that I, myself, could or would do in connection with the financing of real property known as [the Kingsland hotel]."); id. at 40 (same for P. Patel). And no Defendant disputes that B. Gandhi executed the guarantees on behalf of himself, K., and P. Patel. As the powers of attorney are valid, and hence the guarantees are valid, K. and P. Patel transacted business in Georgia sufficient to satisfy O.C.G.A. § 9-10-91(1).

The Court now turns to step two of the jurisdictional inquiry—the constitutional prong. The guarantee agreements constitute sufficient minimum contacts with this forum to satisfy due process without offending "traditional notions of fair play and substantial justice." *Diamond Crystal Brands*, 593 F.3d at 1267. Minimum contacts occur when a defendant "purposefully avail[s]" itself of the laws of Georgia, such that it "should reasonably anticipate being haled into court" in the state. *Id.* The business transacted must "purposefully establish contacts with [Georgia], and there must be a significant nexus between those contacts and the litigation." *Thomas v. Strange Eng'g, Inc.*, No CV 111-074, 2012 WL 993244, at *5 (S.D. Ga. Mar. 22, 2012) (citing *Diamond Crystal Brands*, 593 F.3d at 1267).

Although a contractual relationship alone cannot establish minimum contacts, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985), one in which performance is contemplated in the forum and where the subject property of the contract is in the forum can. *See Paxton*, 307 Ga. App. at 119-120 (finding minimum contacts based on a nonresident's execution of a guarantee agreement in consideration for a loan to purchase property in Georgia).

11

As in *Paxton*, P. and K. Patel availed themselves of Georgia law by executing a guarantee to support the purchase of real property in Georgia. *See* Docs. 1-3; 1-4. Performance on the Note was contemplated in Georgia and the hotel itself was in Georgia. This suit, moreover, revolves around those very guarantees. With minimum contacts established, and as Defendants point to no evidence identifying Georgia as an unduly burdensome forum offensive to notions of fair play and justice, the Constitution cannot object to the exercise of jurisdiction over K. and P. Patel.

Because B. Gandhi acted within the scope of his authority as agent for the Patels when he executed the guarantees, and because the guarantees satisfy both Georgia's long arm statute and due process, both Patels are subject to this Court's jurisdiction. *See Diamond Crystal Brands*, 593 F.3d at 1264; *Paxton*, 307 Ga. App. at 116.

### 3. Statute of Frauds

K. and P. Patel also argue that because they never signed the guaranty agreements, the Statute of Frauds prohibits enforcement of the agreements against them. Doc. 33 at 11; O.C.G.A § 13-5-30(2) (requiring that a promise to pay for the debt of another be in writing).

As noted *supra* at 9, K. and P. Patel fail to establish a genuine dispute as to whether they signed the powers of attorney. The record conclusively establishes that B. Gandhi had authority to enter into the guaranty agreements on behalf of the Patels. *See* Doc. 28-2 at 38, 40. That the Patels did not themselves actually sign the guarantees is therefore irrelevant. Accordingly, the Court rejects K. and P. Patel's Statute of Frauds defense.

### D. The Bank's Claims

#### 1. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008).

The moving party "bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Reese*, 527 F.3d at 1268 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The nonmoving party then "may not rest upon the mere allegations or denials of [their] pleading[s], but . . . must set forth specific facts showing that there is a genuine issue for trial." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) (quoting

12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material only if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248. And courts may consider all materials in the record, not just those cited by the parties. FED. R. CIV. P. 56(c)(3).

### 2. *Breach of Note and Guarantees*

The Bank alleges that Kingsland breached its obligations under the Note and that B. Gandhi, K., and P. Patel all breached their obligations under the guarantees. Doc. 1 at 10-12.

Kingsland and B. Gandhi admit that they are in default and have breached their contractual obligations to the Bank under the Note and guaranty, respectively. *See* Docs. 17 at 6; 19 at 6. They deny that the Bank is entitled to judgment because of the applicability of a defense. Docs. 17 at 6; 19 at 6. K. and P. Patel both deny breaching any obligation to the Bank. *See* Docs. 13 at 7; 15 at 8.

Breach of contract claims in Georgia require proving "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502 (2010). But where the record shows that promissory notes and guarantees have been duly executed by the debtors and that they are in default, a prima facie right to judgment as a matter of law is established, and the burden shifts to the debtors to produce or point to evidence in the record that establishes an affirmative defense. *See Secured Realty & Invs., Inc. v. Bank of N. Ga.*, 314 Ga. App. 628, 631 (2012).

The Bank need prove nothing further in regards to Kingsland and B. Gandhi. Both parties admit breach. As discussed *supra*, no defense applicable to either Kingsland or B. Gandhi succeeds. And as discussed below, the Bank has established a right to and the amount of damages.

The Court finds that K. and P. Patel are similarly liable for damages for breach of their guarantees. Both Patels signed powers of attorney giving B. Gandhi authority to enter into any and all agreements regarding the financing of the Comfort Inn at 111 Edenfield Rd. Doc. 28-2 at 38, 40. Even when the evidence is viewed in the light most favorable to the Defendants, neither K. or P. Patel present anything in opposition to those documents, much less evidence sufficient to survive summary judgment. B. Gandhi signed guarantees of the Note on behalf of the Patels obligating them to repay the Note in the event of a Kingsland default. Docs. 1-3; 1-4. When Kingsland subsequently defaulted, the Patels had an obligation to repay the Note. To date, they have made no payments to the Bank and therefore have breached their guarantees.

### 3. *Unjust Enrichment*

The Bank also brings claims for unjust enrichment against all Defendants. Doc. 1 at 12. "Unjust enrichment is an equitable principle that may be applied when there is no valid written contract between the parties . . . ." *Ga. Dep't of Cmty. Health v. Data Inquiry, LLC*, 313 Ga. App. 683, 687 (2012). Here, however, four contracts—one for each defendant—exist. And the Bank has demonstrated that no genuine dispute of material fact precludes judgment in their

13

favor. Unjust enrichment simply does not apply in this case.

### 4. Damages

With breach established, all that remains is the issue of damages. The Bank has submitted the affidavit of Howard Bowden, Executive Vice President of the Bank, and a loan statement from its records, to prove the amount due on the Note. *See* Doc. 28-2 at 25, 49. Mr. Bowden averred that as of June 5, 2012 the total indebtedness on the Note stands at: $2,905,139.08 in outstanding principal; $220,885.53 in accrued interest; $7,956.00 in late charges; $12,000 for appraisal services; $41,755.85 in property taxes paid to Camden County; and $11,764.98 in property taxes paid to the City of Kingsland, for a total of $3,199,501.45. *See* Doc. 28-2 at 34. The Bank also submitted check stubs for the appraisal amount, *id.* at 42-43, Camden County taxes, *id.* at 45, and City of Kingsland taxes. *Id.* at 47. And from June 5 to the date of judgment, interest accrues at the rate of $403.49 per day. *Id.* at 49.

Defendants have submitted no evidence controverting any of these amounts. The Note and guarantee agreements, moreover, establish that each Defendant is liable for the full amount of the indebtedness. *See, e.g.,* Docs. 1-2 (indicating B. Gandhi's liability for the entire amount of the Note); 1-3 (same for K. Patel); 1-4 (same for P. Patel).

Accordingly, the Court finds all Defendants jointly and severally liable to the Bank for the full amount of the indebtedness—to date, $3,199,501.45, plus $403.49 per day from June 5, 2012 until the day of judgment.

The Bank also requests an award of attorney's fees and costs pursuant to O.C.G.A. § 13-1-11. Section 13-1-11 states that notes may provide for attorney's fees and costs, but that such provisions cannot exceed 15% of the principal and interest owing on the note. The holder of the note is also required to give notice that such provisions will be enforced and give the debtor ten days to pay the principal and interest in full to avoid the obligation to pay attorneys fees. *Id.* at (a)(3).

The Bank fully complied with § 13-1-11. All Defendants received notice of the Bank's intent to enforce the "Collection Costs and Attorney's Fees" provision of the Note and were given ten days to pay in full. *See* Docs. 1-8; 1-1. The Court therefore awards attorney's fees and costs as allowed under O.C.G.A. § 13-1-11 in the amount of 15% of the total principal and accrued interest as of the date of judgment.

## IV. CONCLUSION

Frist, the Court ***ORDERS*** defense counsel to show cause why the responsive pleadings of all four defendants do not violate Federal Rule of Civil Procedure 11(b).

The Court also ***GRANTS*** summary judgment in favor of the Bank on its breach of note and breach of guaranty claims, and ***DISMISSES*** the Bank's unjust enrichment claims.

Finally, the Court ***ORDERS*** the Clerk to enter judgment against each defendant in the following amounts: (1) $3,199,501.45 for

the unpaid principal, interest, late fees, and taxes paid by the Bank; (2) interest in the amount of $403.49 per day from June 5, 2012 until the day of judgment; (3) attorney's fees in the amount of fifteen percent (15%) of $3,126,024.61, which represents fifteen percent (15%) of the unpaid principal and interest due and owing under the Note; and (4) attorney's fees in the amount of fifteen percent (15%) of $403.49 per day from June 5, 2012 until the day of judgment.

This ____ day of October 2012.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA